**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3396-18T3

MARIANO SIMOTA BAILEY,

      Plaintiff-Respondent,

v.

JACQUELINE M. HENNESSEY,

      Defendant-Appellant,

and

NEW JERSEY PROPERTY-
LIABILITY INSURANCE
GUARANTY ASSOCIATION,

      Defendant.

_____

        Argued March 3, 2020 – Decided April 8, 2020

        Before Judges Yannotti, Currier and Firko.

        On appeal from the Superior Court of New Jersey, Law
        Division, Middlesex County, Docket No. L-4316-16.

        Mark S. Hochman argued the cause for appellant (Law
        Offices of Stephen E. Gertler, attorneys; Mark S.
        Hochman, on the briefs).

Robert Howard Baumgarten argued the cause for respondent (Ginarte Gallardo Gonzalez Winograd, LLP, attorneys; Robert Howard Baumgarten, on the brief).

PER CURIAM

Defendant appeals from the judgment entered after trial awarding plaintiff damages for personal injuries he sustained in an accident. We reverse and remand for a new trial on the issue of liability.

I.

We briefly summarize the salient facts. On July 26, 2014, at around 8:30 p.m., defendant was driving her automobile westbound on Wells Mills Road (also known as Route 532) in Waretown. At that time, plaintiff and his friend were riding their bicycles along the Ocean County Rail Trail, a path for pedestrians and bicyclists that intersects with Wells Mills Road in Waretown. Defendant's automobile struck plaintiff as he was riding his bicycle across Wells Mills Road in a marked crosswalk.

Photographs of the scene were admitted into evidence. The photos show the trail is controlled by a stop sign, which is situated at the point where the trail intersects with Wells Mills Road. There are two metal poles in the pavement of the trail a short distance from the roadway, and the word "STOP" is painted in

white in large letters on the pavement, along with a white painted line that is parallel to the road.

Two parallel, white lines are painted on the pavement of Wells Mills Road creating a marked crossing for pedestrians and bicyclists. The portion of Wells Mills Road immediately preceding the point where the trail intersects with the road is not controlled by any traffic devices or stop signs; however, there are signs for eastbound and westbound motorists alerting them of the crossing for pedestrians and bicyclists.

The accident was recorded by a surveillance camera on a nearby convenience store, and a video recording was played for the jury. The video shows that at 8:27:45 p.m., plaintiff's friend approached the stop sign on the trail. He stopped his bicycle and waited for two cars traveling eastbound to pass.

Plaintiff's friend then rode his bicycle into the eastbound lane of Wells Mills Road, where he stopped and waited for two cars traveling westbound to pass. He then crossed the westbound lane and continued bicycling on the trail. He finished crossing Wells Mills Road at 8:28:30 p.m.

Plaintiff appears in the video at 8:28:30 p.m. He is seen riding his bicycle at a steady pace for twelve seconds. Plaintiff did not stop at the stop sign or the pavement warning on the trail. He began to cross Wells Mills Road at 8:28:39

p.m.  At that time, defendant's car is seen heading westbound on Wells Mills Road.  Defendant's car struck plaintiff three seconds later.

Defendant was traveling about eighteen to twenty miles per hour when she reached the marked crossing.  Defendant testified that she did not see plaintiff or the bicycle.  She said her windshield suddenly cracked.  She stopped, exited her car, and saw plaintiff lying in the middle of the road.

Plaintiff sustained severe permanent injuries in the accident, which included a subarachnoid hemorrhage, as well as orbital and mandible fractures.  He spent several weeks in a coma in the hospital's intensive care unit.  After plaintiff was released from the hospital, he was transferred to another facility for three weeks of rehabilitation therapy.

In July 2016, plaintiff filed a complaint alleging he was injured in the accident due to defendant's negligence.  Defendant filed an answer in which she denied liability.  The matter was later tried before a jury.  After the parties completed the presentation of their evidence, the judge conducted a charge conference.

4

Defendant asked the judge to use a modified version of Model Civil Jury Charge 5.30H,[1] and thereby instruct the jury that a bicyclist has a duty to stop at a stop sign and make observations before proceeding into the intersecting street. The judge refused to use the proposed charge but indicated she would instruct the jury that a bicyclist is required to stop at a stop sign when using the streets or roadways.

Defendant also objected to the use of Model Civil Jury Charge 5.32C[2], arguing that the instruction pertained to "pedestrians" and did not apply to "bicyclists." The judge disagreed. The judge used a modified version of Model Civil Jury Charge 5.32C in her final instructions, substituting the term "bicyclist" for "pedestrian."

The jury found that both defendant and plaintiff were negligent and that the negligence of each party was a proximate cause of the accident. The jury apportioned sixty-five percent of the responsibility for the accident to defendant and thirty-five percent to plaintiff. The jury also awarded plaintiff $1,000,000

---

[1] Model Jury Charges (Civil), 5.30H, "Duty of Care: Driver of Motor Vehicle Proceeding Through An Intersection Controlled by a Stop Sign/Flashing Red Traffic Control Device" (rev. June 2007) (Model Civil Jury Charge 5.30H).

[2] Model Jury Charges (Civil), 5.32C, "Duty of Drivers and Pedestrians Crossing at Marked or Unmarked Crosswalk" (approved June 2010) (Model Civil Jury Charge 5.32C).

A-3396-18T3

for his pain and suffering, impairment, disability, and loss of the enjoyment of life.

Thereafter, defendant filed a motion for a new trial on liability, arguing that the judge erred in her instructions to the jury and that the instructional errors tainted the jury's verdict. The judge denied the motion. The judge then molded the damage award based on the jury's allocation of responsibility for the accident, and entered a final judgment awarding plaintiff $650,000, plus prejudgment interest. This appeal followed.

On appeal, defendant argues: (1) the judge erred by providing the jury with a modified version of Model Civil Jury Charge 5.32C; (2) the judge erroneously refused to instruct the jury using her proposed modified version of Model Civil Jury Charge 5.30H; and (3) the errors in the judge's instructions require reversal of the judgment and a new trial on liability.

## II.

We first consider defendant's contention that the trial judge erred by providing the jury with a modified version of Model Civil Jury Charge 5.32C. Defendant argues that the instruction pertains to pedestrians and the judge erred by applying the instruction to bicyclists.

"A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case." Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002) (quoting Rendine v. Pantzer, 276 N.J. Super. 398, 431 (App. Div. 1994)). The jury instructions "must correctly state the applicable law, outline the jury's function and be clear in how the jury should apply the legal principles charged to the facts of the case at hand." Ibid. (citing Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688 (2000)).

In reviewing the instruction, we must "examine the charge as a whole, rather than focus on individual errors in isolation." Ibid. (citing Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 137 (3d Cir. 1997)). An incorrect jury charge constitutes reversible error only "if the jury could have come to a different result had it been correctly instructed." Ibid. (citing Velazquez, 163 N.J. at 688).

In her final instructions to the jury on negligence, the trial judge first discussed the general duties motorists and bicyclists have when they use the streets and highways of our State. The judge said a motorist and bicyclist "each has the right to expect that the other will exercise their rights with reasonable care and subject to the rights of others."

A-3396-18T3

The judge described the duties of a motorist. She stated that persons who drive motor vehicles have a right to enjoy the streets and highways, but they must make proper and lawful use of this right. A motorist must exercise this right with reciprocal regard for the rights of others who may be driving or bicycling upon the highway so as not to negligently injure other persons lawfully upon our streets.

The judge further explained that

> [t]his simply means that the driver of an automobile upon a public highway is under the duty of exercising for the safety of others that degree of care, precaution and vigilance in the operation of [his or her] vehicle which a reasonably prudent person would exercise under similar circumstances. It has sometimes been defined as care that is commensurate with the risk of danger. Thus, the driver of an automobile is required to . . . make such observation[s] for traffic and road conditions and to exercise such judgment to avoid collision or injury to others on the highway, as a reasonably prudent person would have done in the circumstances. A motorist is also required to make such observations for vehicles or a bicyclist which are in or which may come into their path of travel as a reasonably prudent person would make. This duty of reasonable care by users of the highways is mutual and ordinarily each may assume that the other will observe that standard of conduct in the use thereof. Negligence then is a failure to adhere to this standard of conduct.

The judge also stated that motorists and bicyclists both "have mutual and reciprocal rights to use the streets and highways and each has the right to expect

A-3396-18T3

that the other will exercise their rights with reasonable care and subject to the rights of others."  The judge added that:

> a bicyclist is under a duty to exercise for his own safety the care that a reasonably prudent person would exercise under all the circumstances confronting him. Although his observation[s] need not extend beyond the distance within which vehicles moving at lawful speed will threaten him, a bicyclist is required to use such powers of observation, and to exercise such judgment as to how and when to cross a street or highway, as a reasonably prudent person would use in the particular circumstances.

The judge stated that in addition to considering the general duties motorists and bicyclists have when using our streets and highways, the jury should consider certain statutory provisions "that involve pedestrians crossing at marked or unmarked crosswalks[,]" which are part of New Jersey law.  The judge cited N.J.S.A. 39:4-36, and stated that the statute provides:

> That the driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within a marked crosswalk or within any unmarked crosswalk at an intersection.
>
> The driver of a vehicle shall stop and remain stopped to allow a pedestrian, and, again, when I use the word pedestrian, we're referring to bicyclists because that's what we have in this case, to cross the road and within a marked crosswalk, when the bicyclists is upon, or within one lane of, half of the roadway, upon which the vehicle is traveling or onto which the – it is turning.  "Half of the roadway" means

all traffic lanes conveying traffic is – one direction of travel, and includes the entire width of a one-way roadway.

No bicyclist shall leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield or stop.

In the event of a collision between a vehicle and a bicyclist within a crosswalk – a marked crosswalk or at an unmarked crosswalk – in this case, I don't think it's disputed that there was a marked crosswalk, there shall be a permissive inference that the driver did not exercise due care for the safety of the pedestrian.

The judge said the jury should consider N.J.S.A. 39:4-144. The judge stated that this statute "addresses stopping or yielding before entering into an intersection. And it provides in part that no bicyclist shall enter upon an intersecting street marked with a stop sign unless he has come to a complete stop."

The judge told the jury that both statutes establish standards of conduct for the use of our streets and highways. She stated that, if either party violated a statute, the jury may consider such violation in determining whether that party was negligent. The judge instructed the jury that it could find any such violation "constituted negligence or . . . that it did not cons[titute] negligence."

A-3396-18T3

On appeal, defendant argues that the judge erred by instructing the jury using a modified version of Model Civil Jury Charge 5.32C and applying it to bicyclists. Defendant contends that under N.J.S.A. 39:4-36, a person driving a motor vehicle has a duty to stop and remain stopped when a "pedestrian" enters a marked crosswalk at an intersection. Defendant contends the statute does not apply to bicyclists.

We are convinced that the trial judge erred by modifying Model Civil Jury Charge 5.32C and applying it to bicyclists. N.J.S.A. 39:4-36(a) provides in pertinent part, that:

> (1) The driver of a vehicle shall stop and remain stopped to allow a pedestrian to cross the roadway within a marked crosswalk, when the pedestrian is upon, or within one lane of, the half of the roadway, upon which the vehicle is traveling or onto which it is turning. As used in this paragraph, "half of the roadway" means all traffic lanes conveying traffic in one direction of travel, and includes the entire width of a one-way roadway.
>
> (2) No pedestrian shall leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield or stop.
>
> (3) Whenever any vehicle is stopped to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.

(4) Every pedestrian upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

(5) Nothing contained herein shall relieve a driver from the duty to exercise due care for the safety of any pedestrian upon a highway.

When interpreting a statute, we must "determine and give effect to the Legislature's intent." DYFS v. A.L., 213 N.J. 1, 20 (2013). We first consider the plain language of the statute because it generally reflects the Legislature's intent. State v. Frye, 217 N.J. 566, 575 (2014) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)). We give the words of a statute their "ordinary meaning and significance . . . ." State v. Fuqua, 234 N.J. 583, 591 (2018) (quoting Tumpson v. Farina, 218 N.J. 450, 467 (2014)). If the plain language of the statute is clear and unambiguous, "we apply that plain meaning and end our inquiry." Garden State Check Cashing Serv., Inc. v. Dep't of Banking & Ins., 237 N.J. 482, 489 (2019).

In N.J.S.A. 39:4-36(c), the Legislature set forth the duties a "driver" of "vehicles" has when a "pedestrian" enters upon and crosses a "roadway" at a marked crosswalk. N.J.S.A. 39:4-36(c). N.J.S.A. 39:1-1 defines certain words and phrases used in Title 39. "Pedestrian" is defined as "a person afoot." N.J.S.A. 39:1-1. "Driver" is defined as "the rider or driver of a horse, bicycle

or motorcycle or the driver or operator of a motor vehicle, unless otherwise specified." Ibid.

It is clear, therefore, that N.J.S.A. 39:4-26(c) establishes the duties and responsibilities of "drivers" and "pedestrians," but it does not apply to when a person riding a bicycle enters upon and crosses a road at a marked crosswalk. Under those circumstances, a person riding a bicycle is not a "pedestrian" under N.J.S.A. 39:4-36(c) because a bicyclist is not a "person afoot." N.J.S.A. 39:1-1.

We conclude the judge erred by modifying Model Civil Jury Charge 5.32C by substituting "bicyclist" for "pedestrian," and by instructing the jury to consider N.J.S.A. 39:4-36(a) in its deliberations. We also conclude that the judge erred by allowing the jury to consider a violation of N.J.S.A. 39:4-36(a) in determining if defendant was negligent. On remand, the trial judge shall not include Model Civil Jury Charge 5.32C in the instructions to the jury.

### III.

Defendant also argues that the judge erred by failing to instruct the jury using a modified version of Model Civil Jury Charge 5.30H. The model charge sets forth the duties a driver of a motor vehicle has when approaching or proceeding through an intersection controlled by a stop sign or flashing red traffic control device. Ibid. The model charge states that the judge may refer to

13

either N.J.S.A. 39:4-144 or N.J.S.A. 39:4-110(a), whichever is appropriate. Ibid.

Based on the evidence presented at trial, the applicable statute is N.J.S.A. 39:4-144, which states in part:

> No driver of a vehicle . . . shall enter upon or cross an intersecting street marked with a "stop" sign unless . . . [he] has first brought the vehicle . . . to a complete stop at a point within five feet of the nearest crosswalk or stop line marked upon the pavement at the near side of the intersecting street and shall proceed only after yielding the right of way to all vehicular traffic on the intersecting street which is so close as to constitute an immediate hazard.

At the charge conference, defendant requested that the judge modify Model Civil Jury Charge 5.30H to state that:

> No bicyclist shall enter upon or cross an intersecting street marked with a "stop" sign unless:

> The bicyclist has first brought the bicycle to a complete stop at a point within five feet of the nearest crosswalk or stop line marked upon the pavement at the near side of the intersecting street and shall proceed only after yielding the right of way to all vehicular traffic on the intersecting street which is so close as to constitute an immediate hazard.

As stated previously, the judge denied the request. The judge decided to instruct the jury that a bicyclist has a duty to stop at a stop sign before entering an intersecting street. However, the judge refused to instruct the jury that a

14

A-3396-18T3

bicyclist has a continuing duty to make the additional observations required by N.J.S.A. 30:4-144. The judge stated that such an instruction would conflict with a driver's obligation to make "reasonable observations" of other vehicles, bicyclists, "or anything that may come into [the driver's] path."

On appeal, defendant argues that under N.J.S.A. 39:4-14.1(a), a person riding a bicycle on our roadways has the same duties as a driver of a motor vehicle. Defendant contends the judge correctly instructed the jury that a bicyclist has a duty to stop at the stop sign before entering an intersecting street. Defendant argues that the judge also should have instructed the jury that a bicyclist has a duty to make reasonable observations and yield the right of way to vehicular traffic, as provided by N.J.S.A. 39:4-144.

Plaintiff argues that N.J.S.A. 39:4-14.1(a) does not apply in this case because the Ocean County Rail Trail is not a "roadway," as defined in N.J.S.A. 39:1-1, because it is not "ordinarily used for vehicular travel." We disagree. When plaintiff rode his bicycle into the crosswalk on Wells Mills Road, he was riding his bicycle on a "roadway" as that term is defined in N.J.S.A. 39:1-1. Consequently, he had all of the rights and duties applicable to a driver of a vehicle, as provided in N.J.S.A. 39:4-14.1(a).

A-3396-18T3

Therefore, plaintiff was subject to the standards of conduct set forth in N.J.S.A. 39:4-144. As applied in this case, the statute precluded plaintiff from entering or crossing the "intersecting street," which is Wells Mills Road, unless he first brought his bicycle "to a complete stop at a [stop sign] within five feet" of the crosswalk or stop line marked on the pavement "at the near side" of the intersecting street. Ibid. In addition, plaintiff was required to "proceed only after yielding the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard." Ibid.

In her instructions to the jury, the trial judge correctly stated "that no bicyclist shall enter upon an intersecting street marked with a stop sign unless he has come to a complete stop." However, the judge should have instructed the jury that the statute also requires that a bicyclist only proceed into the crosswalk "after yielding the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard." Ibid.

Therefore, the judge erred by refusing to charge the jury in accordance with the modified version of Model Civil Jury Charge 5:32A, that defendant proposed.

IV.

Defendant argues that the errors in the jury instructions require a new trial on liability. As stated previously, in determining whether an error in a jury instruction is reversible error, we must review the charge in its entirety, rather than focus on the individual error. Viscik, 173 N.J. at 18 (citing Ryder, 128 F.3d at 137). Furthermore, reversal is warranted "only if the jury could have come to a different result had it been correctly instructed." Ibid. (citing Velazquez, 163 N.J. at 688).

We are convinced the judge's erroneous use of the modified version of Model Civil Jury Charge 5.32H was not harmless. The judge instructed the jury that the duties of a driver under N.J.S.A. 39:4-36(a) apply and that the jury could consider a violation of N.J.S.A. 39:4-36(a) as evidence of negligence.

As we have explained, the instruction was erroneous because N.J.S.A. 39:4-36(a) does not apply to bicyclists. The error was clearly capable of affecting the jury's determination as to whether defendant was negligent in the operation of her motor vehicle. The error in the instruction also had the potential to affect the jury's allocation of responsibility for the accident.

Furthermore, while the judge correctly instructed the jury that a person riding a bicycle on a roadway has a duty under N.J.S.A. 39:4-144 to stop at a

stop sign before entering an intersecting street, the judge erred by failing to instruct the jury that a bicyclist had a duty to make other observations before proceeding. The judge should have instructed the jury that after stopping at a stop sign, a bicyclist may enter the intersection "only after yielding the right of way to all vehicular traffic on the intersecting street which is so close as to constitute an immediate hazard."

The judge's error in failing to instruct the jury as to all of the duties under N.J.S.A. 39:4-144 was not harmless. The error was clearly capable of affecting the jury's determination as to whether defendant was negligent, and the jury's allocation of responsibility for the accident.

Accordingly, we reverse the judgment entered and remand the matter for a new trial on the issue of liability in accordance with this opinion. We do not retain jurisdiction.

We also direct the Clerk of the Court to provide a copy of our opinion to the Supreme Court's Committee on Model Civil Jury Charges, and request that the Committee consider whether to recommend new or modified instructions with regard to the duties and obligations of persons who ride bicycles on our streets and highways.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                                                        A-3396-18T3